**EXHIBIT A**

# Supreme Court of Florida

---

No. SC96980

---

**THE FLORIDA BAR,**
Complainant,

vs.

**JAMES EDMUND BAKER,**
Respondent.

[January 31, 2002]

PER CURIAM.

We have for review a referee's report regarding alleged ethical breaches by James Edmund Baker. We have jurisdiction. <u>See</u> art. V, § 15, Fla. Const.

Baker and his ex-wife Ellen owned a home in Dade County (the home) as tenants by the entirety. They lived in New York until approximately April 1997, when Baker relocated to Fort Myers for employment as an attorney for the Lee County School Board. Ellen remained in New York. The couple subsequently had marital problems, and Ellen obtained a restraining order against Baker.

In April 1997, the home became subject to foreclosure, and Baker decided

to sell it. Baker located a buyer in July 1997 and executed a contract to sell the home. Baker then retained attorney Larry Parks to represent him in the closing. Prior to closing, Baker signed Ellen's name to several legal documents relating to the sale, including a warranty deed, a power of attorney, a bill of sale, and a Foreign Investor in Real Property Tax Act (FIRPTA) affidavit.[1] The referee found that Ellen did not consent to Baker's signing of her name.

Baker also asked his secretary, Marnell Keller, to notarize the forged signatures. The referee found that Baker never disclosed that he had signed the documents and that he led Keller to believe that Ellen had simply forgotten to have her signature notarized. Keller unlawfully notarized two of the forged signatures.

Baker then sent the documents to Parks, who used them in the July 14, 1997, closing for sale of the home. Baker did not inform Parks that Baker had signed Ellen's name on the documents, nor did he tell Parks that the documents had been unlawfully notarized. The home was sold for a net gain of approximately $29,000, and Baker deposited $20,000 of the proceeds into his personal account. Ellen had no access to the deposited proceeds and received no notice that the home had been sold or that the deposit had been made. Baker

---

1. A FIRPTA affidavit is a sworn statement relating to Internal Revenue Service regulations on the sale of real property.

claims that the immediate sale of the home was to avoid foreclosure and that the proceeds from the sale of the home were only used to pay marital debt. These claims are not contested by the Bar.

On July 16, 1997, Ellen received blank closing documents and a note from Baker indicating that a buyer had been found for the home. The note requested that Ellen sign and return the blank paperwork. When contacted, Baker refused to give Ellen any details regarding the sale, and Ellen therefore refused to sign the blank paperwork. Ellen learned of the sale of the home in March of 1998. The referee found that the evidence did not support Baker's claims that Ellen knew about and consented to the sale of the home or that she concocted her version of the facts in order to gain an advantage in a custody battle for Baker and Ellen's children.

In his final report, the referee recommended that Baker be found guilty of violating Rules Regulating the Florida Bar 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another), 4-8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects), and 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or

misrepresentation). The referee recommended disbarment for a minimum period of five years. While Baker has no prior disciplinary history, the referee emphasized that the fraudulent acts committed are major violations, including three forgeries of legally significant documents, which are crimes prosecutable as felonies. The referee also noted that Baker deceived Ellen, caused Keller to unlawfully notarize documents, and caused Parks to close a real estate deal using fraudulent documents. In recommending discipline, the referee considered Baker's personal history and his lack of a disciplinary record as mitigation. The referee also noted in the findings of fact that, at the time of Baker's alleged misconduct, Baker and Ellen were involved in a bitter divorce.

Baker has petitioned this Court to review the referee's findings of fact, conclusions of guilt, and recommendation of discipline. Baker argues that he had a due process right to a separate discipline hearing, that the referee's findings of fact are not supported by the record and do not support the conclusions of guilt, and that the recommended discipline is too harsh. We find that Baker's due process rights were not violated and affirm the referee's findings of fact and conclusions of guilt. We decline, however, to follow the referee's recommendation of discipline and instead suspend Baker for ninety-one days.

Baker's first argument is that the referee violated Baker's due process rights

-4-

by not giving Baker a separate disciplinary hearing.  Due process in Bar

disciplinary proceedings requires that an accused attorney be given a full

opportunity to explain the circumstances of an alleged offense and to offer

testimony in mitigation regarding any possible sanction.  See Florida Bar v.

Carricarte, 733 So. 2d 975, 979 (Fla. 1999); Florida Bar v. Pavlick, 504 So. 2d

1231, 1234 (Fla. 1987).  Baker had numerous opportunities to fully explain the

circumstances of the alleged offenses and to offer testimony in mitigation.

At the disciplinary hearing, Baker's counsel stated that since Baker's

testimony was fully elicited by the Bar's case-in-chief and Baker's counsel was

able to introduce all exhibits, Baker would rest his case without calling any

witnesses.  The proceeding moved to closing arguments, and the referee stated that

he wanted to hear arguments from both sides regarding discipline.  Bar counsel

reminded the referee that proceedings could be bifurcated for purposes of

conducting a mitigation hearing, but the referee decided this was unnecessary.

Baker made no objection or indication to the referee that Baker needed more time

to present additional evidence.  At the conclusion of closing arguments, Baker's

counsel voluntarily declined the opportunity to submit proposed findings to the

court.

Separate hearings regarding disciplinary sanctions are not required as long

as an accused attorney receives fair notice of the charges faced. See Florida Bar v. Weed, 559 So. 2d 1094, 1096 (Fla. 1990) (no error when referee refused Weed's request to present mitigating evidence after, rather than prior to, determination of guilt or innocence); see also Florida Bar v. Vernell, 721 So. 2d 705, 707 (Fla. 1998). Baker was on notice before the final hearing of a possible disbarment sanction. The complaint served on Baker clearly specified the charges being brought against him, including fraud, criminal acts of forgery, and multiple misrepresentations. The Florida Standards for Imposing Lawyer Sanctions authorize disbarment for such conduct. See, e.g., Fla. Stds. Imposing Law. Sancs. 5.11 (disbarment appropriate when lawyer engages in intentional conduct involving dishonesty). The Bar also specifically requested a disbarment sanction during its closing argument. Baker could have requested an opportunity to present additional evidence at a future hearing but instead went on with closing arguments specifically stating, "This does not warrant disbarment."

Baker, knowing the charges brought against him, was afforded opportunities to explain the circumstances involving his alleged misconduct and to offer mitigation regarding potential sanctions. There is no due process violation where Baker failed to avail himself fully of these opportunities. See Florida Bar v. Daniel, 626 So. 2d 178, 183 (Fla. 1993) ("Daniel clearly was afforded an

opportunity to be heard; the fact that he voluntarily chose not to take advantage of that opportunity does not offend due process."). Thus, Baker was given due process and was not entitled to a separate hearing regarding disciplinary sanctions.

Baker's second claim is that the referee's findings of fact are not supported by the record and do not support the referee's findings of guilt. To succeed in challenging the referee's findings of fact, Baker must establish that there is a lack of evidence in the record to support such findings or that the record clearly contradicts the referee's conclusions. See Carricarte, 733 So. 2d at 978. Baker has not met this burden.

This Court has stated that, "[t]he referee is in a unique position to assess the credibility of witnesses, and [the referee's] judgment regarding credibility should not be overturned absent clear and convincing evidence that [the referee's] judgment is incorrect." Florida Bar v. Fredericks, 731 So. 2d 1249, 1251 (Fla. 1999) (quoting Florida Bar v. Thomas, 582 So. 2d 1177, 1178 (Fla. 1991)). The referee in the instant case weighed the credibility of Baker's testimony and, where evidence conflicted, chose to credit the testimony of other witnesses over Baker's testimony. After reviewing the record, we find that the evidence supports the referee's judgment.

Baker alleges that the referee's finding that Ellen did not know that the

home had been sold is not supported by the record. Ellen, however, testified that

Baker never informed her that a buyer had been found. Baker also criticizes the

referee's finding that Baker led Keller to believe that Ellen had simply forgotten to

have her signature notarized. Keller testified that when she informed Baker that

Ellen had not notarized her signature, Baker replied, "Can you please do that for

me?" Baker made no attempt to clarify that Ellen had not signed the document.

The referee justifiably relied on Keller's testimony in finding Baker's failure to

clarify the situation tantamount to actively leading Keller to believe that Ellen had

simply forgotten to have her signature notarized. Additionally, Baker argues that

the referee relied on a letter purportedly mailed by Baker to Ellen. Baker testified

that he did not recall sending a letter, and therefore the letter was not authentic.

However, Ellen testified that the letter was mailed to her with the blank closing

documents. The referee, who is not bound by technical rules of evidence,

admitted the letter. See Florida Bar v. Vannier, 498 So. 2d 896, 898 (Fla. 1986).

Ellen's testimony provides a sufficient predicate for the referee's decision to admit

the letter. Baker has not established that the referee's factual findings lack support

from the record evidence. See Carricarte, 733 So. 2d at 978.

The referee's recommendations of guilt are also supported by the record.

See Florida Bar v. Pellegrini, 714 So. 2d 448, 451 (Fla. 1998) ("A referee's

findings of fact regarding guilt are presumed correct and should be upheld unless clearly erroneous or without support in the record."). In concluding that Baker violated rule 4-8.4(a), (b), and (c), the referee found that Baker, without Ellen's authorization, forged Ellen's name. The referee also found that Baker perpetuated this fraud by having Keller notarize the unlawfully signed documents and by submitting the documents to Parks for use in a real estate closing. There is support in the record for these findings. The referee's findings of fact and recommendations of guilt are approved.

Baker's final argument is that the referee's recommendation of discipline is too severe. The referee recommended that Baker be disbarred for a minimum period of five years. This Court's scope of review when reviewing a referee's recommended discipline is broader than when reviewing a referee's findings of fact and conclusions of guilt. See Florida Bar v. Centurion, 25 Fla. L. Weekly S344, S345 (Fla. May 4, 2000) ("With regards to attorney discipline, it is ultimately this Court's task to determine the appropriate sanction; however, a referee's recommendation will be followed if reasonably supported by existing case law."). Disbarment is an extreme sanction that is reserved for the most egregious misconduct. See Florida Bar v. Summers, 728 So. 2d 739, 742 (Fla. 1999). Although the misconduct in this case constitutes serious ethical violations,

we conclude that the referee's recommendation of discipline is too severe and not proportionate to discipline which this Court has approved in a similar circumstance.

The referee cited <u>Florida Bar v. Kickliter</u>, 559 So. 2d 1123, 1124 (Fla. 1990), in support of the disbarment recommendation.  In <u>Kickliter</u>, this Court held that disbarment period was warranted for an attorney who had forged his client's signature on a will when the client died without signing.  <u>See id.</u> at 1123-24.  The attorney had two of his employees witness the forgery, and the attorney notarized the document.  <u>See id.</u> at 1123.  The attorney then submitted the will for probate. <u>See id.</u>  Despite substantial mitigation, this Court found that the attorney "committed a fraud on the court and allowed it to continue until exposed through criminal proceedings." <u>Id.</u> at 1124.

While Baker forged several legal documents, he did not commit a fraud on the court.  Moreover, importantly, Baker's alleged misconduct was not connected to his law practice, while the attorney in <u>Kickliter</u> forged a client's signature and used that forgery in the representation of the client.  Although lawyers may be disciplined for conduct that is not related to the practice of law, this Court has recognized that misconduct not connected with the practice of law is to be evaluated differently and may warrant less severe sanctions than misconduct

-10-

committed in the course of the practice of law. See Florida Bar v. Corbin, 540 So. 2d 105, 107 (Fla. 1989) (finding mitigation where an attorney's "misconduct did not involve the practice of law nor actual breach of a professional responsibility to litigants or clients.").

We find that the instant case more closely resembles Florida Bar v. Rose, 607 So. 2d 394, 395 (Fla. 1992), than Kickliter. In Rose, an attorney forged his ex-wife's signature on client agreement forms, stock certificates, and checks more than two years after the divorce was final. See id. at 394. The attorney sought the proceeds from the forged documents for his own account. See id. at 394-95. The attorney contended that his ex-wife had consented to his signing her name on other accounts, and therefore he presumed this consent remained in effect. See id. at 395. This Court imposed a thirty-day suspension, approving the referee's finding that the attorney was guilty of conduct involving misrepresentation. See id.

In the instant case, Baker forged Ellen's signature on several legal documents and caused others to perpetuate the forgeries by notarizing or witnessing the signatures. While Baker implicated others in the fraudulent scheme, Baker has contended, and the Bar has not refuted, that the home was sold so that a mortgage foreclosure could be avoided and so that marital debt could be paid. Thus, Baker did not seek the proceeds from the sale of the home for his own

personal gain.

While we emphasize that Baker's violations are serious, in that his conduct was dishonest and unlawful, we find the ultimate sanction of disbarment is not warranted. Our decision in <u>Rose</u> approved a thirty-day suspension for similar conduct. <u>See</u> <u>id.</u> We conclude, however, that a thirty-day suspension is insufficient given the fact that Baker's violations have corrupted a notary and affected a title to real property and the negotiation of a check. Although Baker did not utilize the forged documents for personal gain, the referee found that Baker committed three criminally punishable forgeries on legal documents, caused his secretary to unlawfully notarize two of the forgeries, caused two other employees to witness the forgeries, and submitted the forged documents to an attorney for use in a real estate closing. Therefore, we suspend Baker for ninety-one days. This is severe discipline because Baker will be required to demonstrate proof of rehabilitation in order to achieve reinstatement. <u>See</u> R. Regulating Fla. Bar 3-.5.1(e). We impose this discipline because we expect members of The Florida Bar to conduct their personal business affairs with honesty and in accordance with the law. <u>See</u> <u>Florida Bar v. Hosner</u>, 520 So. 2d 567, 568 (Fla. 1988).

James Edmund Baker is hereby suspended from the practice of law for ninety-one days and must successfully complete a Professionalism Enhancement

Program prior to reinstatement. The suspension will be effective thirty days from the filing of this opinion so that Baker can close out his practice and protect the interests of existing clients. If Baker notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Baker shall accept no new business from the date this opinion is filed until the suspension is completed. We note that grievance proceedings are unrelated to other court actions or domestic proceedings and that the present judgment is not to be used as a remedy in any unrelated action. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from James Edmund Baker in the amount of $2,178.17, for which sum let execution issue.

It is so ordered.

WELLS, C.J., and SHAW, HARDING, and PARIENTE, JJ., concur.
ANSTEAD, LEWIS, and QUINCE, JJ., concur in result only.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.


Original Proceeding - The Florida Bar

John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Director of

-13-

Lawyer Regulation, The Florida Bar, Tallahassee, Florida; and Stephen Christopher Whalen, Assistant Staff Counsel, Tampa, Florida,

for Complainant

Joseph A. Corsmeier of Tew, Barnes & Atkinson, L.L.P., Clearwater, Florida,

for Respondent

**EXHIBIT B**

STATEWIDE GRIEVANCE        VS.        CV-02-0818460-S
BAKER, JAMES EDMUND

APPLICATION FOR RECIPROCAL DISCIPLINE:
GRANTED. THE RESPONDENT DECLINED TO APPEAR.
BASED ON A REVIEW OF THE DOCUMENTATION, I
FIND THAT RECIPROCAL DISCIPLINE IS APPRO-
PRIATE. THE RESPONDENT IS SUSPENDED FOR
91 DAYS, AND MAY BE REINSTATED ON PROOF HE
HAS BEEN REINSTATED IN FLORIDA.
BY THE COURT,
(BEACH,J)
D.C.WALDEN
11/4/02

CONN STATEWIDE BAR COUNS
SUITE NO 2, 2ND FLOOR
287 MAIN STREET

06106     EAST HARTFORD    CT 06118

SUPERIOR COURT
95 WASHINGTON STREET
HARTFORD, CT

DATED: NOV 05, 2002
HHD

FILED VCM

DEC 10    3 40 PM '02

U.S DISTRICT COURT
NEW HAVEN, CONN

STATEWIDE GRIEVANCE COMMITTEE

DEC - 8 2002

RECEIVED

**EXHIBIT C**

# Supreme Court of Florida

THURSDAY, SEPTEMBER 4, 2003

**CORRECTED ORDER**

CASE NO.: SC03-224

Lower Tribunal No.: 2003-11,094(20A)HRE

THE FLORIDA BAR

RE: JAMES EDMUND
BAKER

| Complainant | Respondent |
|---|---|

The uncontested report of the referee is approved and respondent is reinstated effective immediately under the terms and conditions set forth in the report.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from James Edmund Baker in the amount of $913.05, for which sum let execution issue.

Not final until time expires to file motion for rehearing and, if filed, determined. The filing of a motion for rehearing shall not alter the effective date of this reinstatement.

A True Copy
Test:

Thomas D. Hall
Clerk, Supreme Court

dy
Served:
JOHN ANTHONY BOGGS
STEPHEN CHRISTOPHER WHALEN
JOSEPH A. CORSMEIER
HON. KIMBERLY CARLTON BONNER, JUDGE

A TRUE COPY
Attest:
THOMAS D. HALL, Clerk
Supreme Court of Florida
By _____
Deputy Clerk

**EXHIBIT D**

**COPY**

STATEWIDE GRIEVANCE        VS.        CV-02-0818460-S
BAKER, JAMES EDMUND

105.00 REQUEST

REINSTATEMENT ORDERED, IN LIGHT OF
COMPLIANCE WITH THE GRIEVANCE COMMITTEE'S
INITIAL OBJECTION.

BY THE COURT
BEACH, J.
01/28/04

NOTICE SENT TO ALL APPEARING PARTIES;        JRG

JAMES EDMUND BAKER
14301 CAIRNWOOD COURT
ORLANDO, FL.        32837

SUPERIOR COURT
95 WASHINGTON STREET        06106
HARTFORD, CT

DATED: JAN 29, 2004
HHD